1

2

3

4

5        **UNITED STATES DISTRICT COURT**

6        **SOUTHERN DISTRICT OF CALIFORNIA**

7

8    TOMMY RAY BROWN,                              CASE NO. 98CV0030-LAB (WMC)

9                            Petitioner,          **ORDER ADOPTING REPORT AND**
                                                  **RECOMMENDATION RESULT AND**
10          vs.                                   **AUGMENTING  ANALYSIS TO DENY**
                                                  **FIRST AMENDED HABEAS CORPUS**
11                                                **PETITION**

12   JAMES TILTON, Acting Secretary of
     California Department of Corrections and     [Dkt No. 95]
13   Rehabilitation,

14                            Respondent.

15

16          Petitioner Tommy Ray Brown ("Brown") seeks habeas corpus relief pursuant 28 U.S.C. § 2254

17   from his December 1990 state criminal conviction.  Magistrate Judge William McCurine, Jr. prepared

18   a Report and Recommendation ("R&R") (Dkt No. 95) recommending the court deny Brown's First

19   Amended Petition, filed April 13, 2004 (Dkt No. 59).  Brown filed extensive Objections to the R&R.

20   Dkt No. 100.  Respondent filed a brief Reply.  Dkt No. 99.  For the reasons discussed below, the R&R

21   is **ADOPTED**, with **MODIFIED AND AUGMENTED** analysis, and the First Amended Petition is

22   **DENIED**.[1]

23   **I.       BACKGROUND**

24          The R&R traces the factual background and procedural history surrounding Brown's conviction

25   in December 4, 1990 of murder, attempted murder, robbery, vehicle taking, and shooting at an

26   _____

27          [1]  The court delayed issuing this Order until the United States Supreme Court issued its opinion in
     Whorton v. Bockting, -- U.S. --, 127 S.Ct. 1173 (U.S. Feb. 28, 2007) for the purpose of ensuring the analysis
28   of the Confrontation Clause issue alluded to in Brown's Objections to the R&R would be informed by any
     discussion of the new rule respecting testimonial hearsay in Crawford v. Washington, 541 U.S. 36 (2004)
     compared to the old rule of Ohio v. Roberts, 448 U.S. 56 (1980).

1    inhabited building, and his post-conviction proceedings in state court.[2]  Dkt No. 95, pp. 2-3.  Brown's

2    direct appeal was denied, as well as his six state habeas petitions.[3]   He is serving a sentence of 30

3    years to life, plus 16 years.  *See* Dkt No. 65, 2:10.

4         Brown first filed his federal habeas petition in January 1998.  The petition is accordingly

5    governed by the Anti-Terrorism And Effective Death Penalty Act of 1996 ("AEDPA").  Respondent

6    answered the petition, and Brown filed a Traverse.  Dkt No. 9, 10, 15.  Brown unsuccessfully moved

7    for leave to conduct discovery and for expansion of the record.  Both sides provided supplemental

8    briefing and declarations.  Dkt Nos. 16, 27.  On December 22, 1998, District Judge Napoleon A. Jones

9    adopted Magistrate Judge Ruben B. Brooks' R&R to deny Brown's habeas petition on grounds the

10   federal petition was untimely filed.  Dkt No. 32.  Judgment was entered for Respondent.  Dkt No. 33.

11   Brown unsuccessfully moved for reconsideration, then appealed.  Dkt Nos. 35-39.

12        The Ninth Circuit reversed and remanded on grounds denial of access to personal legal

13   materials can entitle a petitioner to equitable tolling in proper circumstances, contrary to Judge Jones'

14   conclusion.[4]  Dkt No. 44.  That court found the district court did not conduct sufficient fact finding to

15   establish how complete Brown's denial of access was or how long it lasted, and remanded for

16   development of the record.  That court also found a calculation error caused the tolled period the

17   district court had recognized to be 30 days too short.

18        This case was reassigned to the undersigned District Judge on October 20, 2003 and to

19   Magistrate Judge McCurine on January 21, 2004.  Dkt Nos. 46, 50.  On February 13, 2004, Judge

21        [2]  The court reads "Brown" rather than "Thomas" at R&R 4:21.

22        [3]  Brown filed his sixth state habeas petition in the California Supreme Court while his federal petition
     was on appeal in the Ninth Circuit.  The state high court again summarily denied that petition on
23   February 28, 2001, with citations to In re Clark, 5 Cal. 4th 750 (1993), In re Robbins, 18 Cal. 4th 770, 780
     (1998), In re Waltreus, 62 Cal.2d 218 (1965), and In re Miller, 17 Cal.2d 734 (1941).

25        [4]  The Ninth Circuit had determined that "[i]f Brown meets all of the requirements for equitable tolling,
     then AEDPA's statute of limitations should be tolled."  Dkt No. 44, p. 7.  "Because it is possible that Brown
26   was denied access to his legal materials, the district court **must determine** 'precisely what the factual
     circumstances were regarding' the denial of access."  Dkt No. 44, p. 6 (emphasis added), *citing* Lott v. Mueller,
27   304 F.3d 918, 921 (9th Cir. 2002), Whalem/Hunt v. Early, 233 F.3d 1146, 1149 (9th Cir. 2000) (*en banc*).  In
     particular, the Ninth Circuit instructed the district court "should determine" whether Brown was "completely
28   denied access to his legal materials for an extended period of time," and "also must determine whether, under
     the circumstances, Brown exercised due diligence in pursuing his claims."  Dkt No. 44, pp. 6-7, *citing* Lott,
     304 F.3d at 924-25, Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).

McCurine entered an Order reopening the case and setting a briefing schedule for Respondent to file a Motion To Dismiss or an Answer to the petition. Dkt No. 51. He instructed, among other things, that if Respondent "contends the Petition should be dismissed because it was not filed within the one-year statute of limitations, Respondent shall address the concerns raised by the Ninth Circuit." Dkt No. 51, 2:15-17 (emphasis omitted). "If Respondent does not renew its motion to dismiss on the basis that the Petition was not filed within the one-year statute of limitations, Respondent shall clearly and expressly indicate that the statute of limitations defense is waived." Id. 3:9-11.

This court granted Brown leave to file a First Amended Petition ("Petition'"), and he did so on April 13, 2004. Dkt No. 58-59. The Petition alleges he was denied due process and a fair trial: (1) from systematic prosecutorial misconduct (misstatements of law, eliciting inflammatory and irrelevant evidence, referring openly to facts outside the record, impugning defense counsel, expressing personal animus against petitioner, using voice and body to intimidate witnesses, and reference to gang affiliation to inflame the jury); (2) use of improper gang expert testimony; (3) admitting irrelevant and prejudicial gang evidence; (4) allowing prosecutor to prove petitioner previously served prison time; (5) denial of his request to substitute trial counsel and denial of his request for a continuance so he could prepare for self-representation; (6) denial of right to substitute trial counsel; (7) ineffective assistance of trial counsel (for various evidentiary, tactical, and investigatory failings); and (8) an erroneous jury instruction. Judge McCurine issued a new scheduling Order in consideration of the amended Petition. Dkt No. 62. That Order reiterated Respondent's options as well as the admonition Respondent address the Ninth Circuit's opinion or expressly waive the statute of limitations defense.

Brown moved on April 26, 2004 for an evidentiary hearing on the merits of his Petition and for appointment of counsel. Dkt No. 65. Judge McCurine denied the motion without prejudice. Dkt No. 67. He found the ineffective assistance of counsel ("IAC") claim did not require an evidentiary hearing because the argument his counsel "failed to investigate witnesses, conduct background checks on . . .witnesses, and failure to have [an] investigator testify," even if proved, would not sustain his IAC claim. Id. 2:7-11. He also found Brown's argument a copy of the AEDPA was not available in the prison law library in September 1998 to be both premature and speculative unless and until Respondent filed a motion to dismiss on statute of limitations grounds. Id. 2:23-26.

1    Respondent filed an Answer to the Petition on June 23, 2004, purporting to incorporate a

2    renewed motion to dismiss:   "Respondent reasserts the motion to dismiss the petition because it is

3    barred by the statute of limitations."  Dkt No. 71, 10:21-22, 2:26 ("Petition is barred by the one year

4    statutory limitations period of AEDPA").  Brown's Traverse addresses the statute of limitations issue:

5           Petitioner denies IV. of the answer at p. 2, the petition is not barred by
            the one-year statute (A.E.D.P.A.) filing period.  Furthermore, the
6           respondent failed to comply with this court order of 4-20-04 at p. (1),
            respondent did not file a motion to dismiss on this issue thereby
7           rendering this issue moot.

8    Traverse, Dkt No. 74 2:1-5.

9           No activity appears in the docket between the July 23, 2004 Traverse and March 16, 2005,

10   when Judge McCurine set a May 18, 2005 evidentiary hearing "limited to those issues raised by the

11   Ninth Circuit Court of Appeals" and appointing counsel for Brown for that hearing only, revisiting

12   Brown's April 26, 2004 requests.  Dkt No. 76, 2:1-9.  The hearing was continued several times, with

13   intervening telephonic status conferences.  The court permitted Brown to file a motion to discover

14   when the prison library received the AEDPA materials, and limited discovery was authorized.  Dkt

15   Nos. 84, 88.  On August 18, 2005, Judge McCurine authorized the filing of an Amended Answer and

16   Traverse, denying Brown's discovery motion as "now moot."  Dkt No. 90.  Respondent filed a First

17   Amended Answer to the First Amended Petition on August 30, 2005, but asserted no statute of

18   limitations defense.[5]  Dkt Nos. 91, 92.  The court finds the statute of limitations defense has been

19   abandoned, albeit not in the manner prescribed in the April 2004 scheduling Order.[6]  Dkt No. 62, ¶ 6.

20

21         [5]  The Amended Answer characterizes Brown's arguments with temporal references, but without
     pursuing a statute of limitations argument: "His conviction was affirmed on appeal in 1992, and the state
22   supreme court denied review.  Six years later, Petitioner copied over the arguments from his direct appeal
     longhand and repackaged these claims in this federal petition.  Age has not improved his claims, or turned
23   ordinary state law questions into issues of Constitutional magnitude."  Dkt No. 92, 2:13-16.  In Herbst v. Cook,
     260 F.3d 1039 (9th Cir. 2001), the court characterized the statute of limitations as an affirmative defense and
24   stated that the district court may raise it *sua sponte*.  However, the development of the record on the timeliness
     issues anticipated on remand by the Ninth Circuit has not materialized, and in consideration of Respondent's
25   apparent waiver of that defense, this court declines to further delay resolution of this case by performing an
     analysis Respondent could and should have provided.  Cf. Smith v. Duncan, 297 F.3d 809, 814-15 (9th Cir.
26   2002) (when the petitioner has been placed on notice the petition is subject to dismissal based on AEDPA's
     statute of limitations, petitioner had the burden to demonstrate the limitation period was tolled).

27

28         [6]  "**If Respondent does not renew its motion to dismiss on the basis that the Petition was not filed
     within the one-year statute of limitations, Respondent shall clearly and expressly indicate that the statute
     of limitations defense is waived.**"  Dkt No. 62, ¶ 6 (emphasis in original)..

                                                    - 4 -                                          98CV0030

1    Brown moved on January 12, 2006 (filed the same day as the R&R) for an evidentiary hearing

2    on the underlying merits of his IAC claims, proceeding *pro se*.  Dkt No. 96.  Judge McCurine denied

3    that motion without prejudice, applying Rule 6(a) of the Rules Governing § 2254 cases, on grounds:

4    the court was not persuaded the discovery Brown sought would substantiate his claim of IAC; most

5    of the discovery he sought had been produced at trial; and his habeas petition could be fairly decided

6    on the merits without that discovery.[7]  Dkt No. 98.  This court concurs with that assessment.

7    The R&R recommends the Petition be denied on all grounds Brown raises.  Dkt No. 95.

8    Respondent filed Objections to the R&R solely to request correction of the R&R caption[8] and to

9    summarily reassert the contention most of Brown's claims are procedurally defaulted, "as set forth in

10   the Answer."  Dkt No. 99.  Brown filed extensive objections to the R&R, rearguing the merits of his

11   Petition and stating the R&R was "unreasonable" in its determinations, or the magistrate judge "was

12   mistaken" or "in error" in recommending rejection of each ground addressed in the R&R.  Dkt No.

13   100, *e.g.* 2:10, 12:2. 8:12, 12:21, 14:19.  In addition, Brown objects Judge McCurine failed to address

14   his alleged Sixth Amendment Confrontation Clause violation.

15   **II.    DISCUSSION**

16   **A.    Legal Standards**

17   **1.    R&R Review**

18   A district judge "may accept, reject, or modify the recommended decision" on a dispositive

19   matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes.

20   FED.R.CIV.P. ("Rule") 72(b); *see* 28 U.S.C. § 636(b)(1).  The district judge may also "receive further

21   

22   [7]   A petitioner must make specific factual allegations demonstrating good reason to believe the
petitioner may, through discovery, be able to garner sufficient evidence to entitle him to relief.  Bracy v.
23   Gramley, 520 U.S. 899, 904, 908-09 (1997). Rule 6(a) of the Rules Governing § 2254 Cases entitles litigants
"to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent
that, the judge in the exercise of his [or her] discretion and for good cause shown grants leave to do so, but not
24   otherwise." Rule 6(a), 28 U.S.C. foll. § 2254.  Unsupported or speculative theories do not warrant discovery.
*See* Harris v. Johnson, 81 F.3d 535, 540 (5th Cir. 1996). "[A]s amended by the AEDPA, 28 U.S.C. § 2254(e)
25   now substantially restricts the district court's discretion to grant an evidentiary hearing").  Baja v. Ducharme,
187 F.3d 1075, 1077 (9th Cir. 1999).  If the petitioner has failed to develop a factual basis in state court, the
26   federal habeas court "must deny a hearing unless the applicant establishes one of the two narrow exceptions
set forth in § 2254(e)(2)(A) & (B)."  Id. at 1077-78.
27   

28   [8]   Judge McCurine entered an Order on August 22, 2006 *sua sponte* substituting James Tilton, Acting
Secretary of the California Department of Corrections and Rehabilitation as Respondent, in consideration of
Brown's transfers within the prison system. Dkt No. 102.

evidence, or recommit the matter to the magistrate judge with instructions." Id.  The district court "shall make a *de novo* determination of those portions of [a magistrate judge's R&R] to which objection is made." 28 U.S.C. § 636(b)(1); Rule 72(b); *see* United States v. Raddatz, 447 U.S. 667, 676 (1980) (when objections are made, the court must make a *de novo* determination of the factual findings to which there are objections); Gates v. Gomez, 60 F.3d 525, 530 (9th Cir. 1995) (the court reviews *de novo* the magistrate judge's conclusions of law).

### 2.  Application Of AEDPA Standards

Title 28 United States Code § 2254(a) ("Section 2254") habeas proceedings measure state convictions against federal constitutional requirements applicable to the states:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United. States.

Federal courts review state prisoners' petitions filed after April 24, 1996 under AEDPA. AEDPA imposed more stringent standards than previously governed federal habeas review. Lindh v. Murphy, 521 U.S. 320, 327 (1997).  A writ petition will not now be granted unless the state court decision is "contrary to or involved an unreasonable application of" federal law.  In applying 28 U.S.C. § 2254 (a), (d)(1)-(2) of AEDPA, for purposes of determining what constitutes "clearly established federal law," the courts rely on United States Supreme Court holdings (as opposed to *dicta*) as they existed at the time the state court rendered the relevant decision.  Williams v. Taylor, 529 U.S. 362, 412, 405, 413 (2000);  *see also*  Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996); Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999) (the petitioner must identify United States Supreme Court decisions that address his claims).  Ninth Circuit authority may be considered "for its persuasive authority in applying Supreme Court law."  Van Tran v. Lindsey, 212 F.3d 1143, 1150 (9th Cir. 2000), *overruled on other grounds*, Andrade, 538 U.S. at 71 (federal courts are not required to review state court decisions *de novo* before applying AEDPA standards, overruling the two-step consideration of habeas petitions required by Van Tran).

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to **any claim that was adjudicated on the merits in State court proceedings** unless the adjudication of the claim --

(1)  resulted in a decision that was contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

 (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added); *see* <u>Williams</u>, 529 U.S. at 411 (under the "unreasonable application" clause, the test is objective unreasonableness, not whether the determination was "erroneous" or "incorrect"); *see also* <u>Andrade</u>, 538 U.S. at 75-76.

Errors of state law cannot support federal habeas corpus relief, and federal courts may not reexamine state court determinations on state law issues.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991) (a state's interpretation of its laws or rules provides no basis for federal habeas corpus relief because no federal constitutional question arises).  Only errors of federal constitutional magnitude will support federal intervention in state judicial proceedings to correct such errors.  <u>Jackson v. Ylst</u>, 921 F.2d 882, 885 (9th Cir. 1990). A federal reviewing court presumes that determinations of factual issues made by a state court are correct, with the burden on the petitioner to rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(2).  In limited circumstances, an evidentiary hearing may be held in federal court to develop the factual basis of a claim, but only when:

(A) the claim relies on --

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; **or**

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; **and**

(B) the facts underlying the claim **would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense**.

28 U.S.C. § 2254(e)(2) (emphasis added).

In this case, the R&R applied "the less deferential pre-AEDPA standard of review" to seven of Brown's eight claims, excepting only the Sixth Claim (alleging fair trial violations when the trial court denied his request to substitute trial counsel):

98CV0030

1   Before turning to the merits of Petitioner's claims, the proper
2   standard of review must be addressed.  Because claims one through six,
    and number eight have been exhausted on the basis of state procedural
3   grounds, the substance of these federal habeas claims have [*sic*] not
    been considered by the state supreme court.  **Although some of these**
4   **claims had been reviewed on the merits by state courts during**
    **appellate proceedings, the state courts have not reviewed the merits**
5   **of these claims during any of the state habeas proceedings which**
    **have served to exhaust such claims**.  *Accordingly*, **this Court must**
6   **apply the less deferential pre-AEDPA standard of review**, which
    provides for deference to the factual findings of a state court, but
7   requires a de novo review of both legal questions and mixed questions
    of law and fact.  *See Swan v. Peterson*, 6 F.3d 1373, 1379 (9th Cir.
8   1993).  **Petitioner's sixth claim will be reviewed under AEDPA, as**
    **that claim was raised in Petitioner's first habeas petition filed in**
    **1992 and rejected by the state in a reasoned opinion**.[9]
9

10  R&R, Dkt. No. 95, 11:27-12:10 (emphasis added).

11      However, AEDPA applies to **all federal habeas petitions pending on or filed after** its

12  effective date in April 1996.  Lindh, 521 U.S. at 327; *see* Woodford v. Garceau, 538 U.S. 202, 207

13  (2003) (AEDPA does not apply if the state prisoner had (1) an application for habeas relief, (2) **before**

14  **a *federal* court**, (3) seeking an adjudication on the merits, (4) before April 24, 1996).   Brown first

15  filed his federal petition on January 7, 1998.  The entire Petition is accordingly subject to AEDPA

16  standards.  The R&R acknowledges, "some of these claims had been reviewed on the merits by state

17  courts during appellate proceedings." R&R 12:2-3.  AEDPA recites it applies to "**any claim that was**

18  **adjudicated on the merits in State court proceedings**" (28 U.S.C. § 2254(d) (emphasis added)), not

19  only to claims addressed in state **habeas** proceedings and not only if the state supreme court itself

20  reached the merits.[10]  *See* R&R 12:2-5.  This court accordingly applies AEDPA standards to all

21

22      9  The R&R elsewhere states, in discussing Brown's Ground Seven IAC claims, the R&R elects to
23  apply "pre-AEDPA standards to two 'sub-claims.'" After first identifying the Court of Appeal's July 23, 1992
    decision denying on the merits in a reasoned decision of Brown's 14 alleged instances of IAC, the R&R
24  continues: "However, Petitioner has included two new sub-claims of ineffective assistance of counsel in this
    petition based on trial counsel's failure to object, and ineffective appellate counsel; accordingly the pre-AEDPA
25  standard of review will be used to analyze **those sub-claims**."  R&R 19:22-25 (emphasis added). Only to the
    extent the R&R intends to suggest *de novo* review by this court is necessary, if review is reached at all, because
26  the state courts never reached the merits of the "new" claims does this court understand a "pre-AEDPA"
    reference to any portion of a federal habeas petition filed after April 24, 1996.  AEDPA at 28 U.S.C. § 2254(a)
27  provides the general authority to review cognizable habeas claims, including standards of review.

28      10  When it was impossible for a state court to adjudicate the merits of a claim cognizable on federal
    habeas review for lack of factual development, AEDPA deference to findings of fact may give way to *de novo*
    review by the federal habeas court.  *See* Killian v. Poole, 282 F.3d 1204, 1207-08 (9th Cir. 2002); *see also*

1    portions of the Petition any reviewing state court adjudicated on the merits in any of Brown's post-

2    conviction proceedings.

3                    **3.    Constitutional Errors**

4          "Trial errors" of even constitutional magnitude can be deemed harmless, whereas "structural

5    errors" require reversal of the conviction because they infect the entire trial process, and thus they

6    cannot be deemed harmless. Arizona v. Fulminante, 499 U.S. 279, 306-10 (1991). Most constitutional

7    errors are of the trial type, and most "can be harmless." Id. at 306.  These "occur during the

8    presentation of the case to the jury" and are amenable to harmless-error analysis because the error "may

9    . . . be quantitatively assessed in the context of other evidence presented in order to determine [the

10   effect it had on the trial]." Brecht v. Abrahamson, 507 U.S. 619, 629 (1993), *quoting* Fulminante, 499

11   U.S. at 307-08.  For example, the Supreme Court classifies even the admission of an involuntary

12   confession as trial-type error. Id. at 306-11.  Trial errors are analyzed under the Brecht standard.  The

13   Supreme Court has identified only a handful of structural errors.  Deprivation of the right to counsel

14   or a biased judge are examples of structural error. Fulminante, 499 U.S. at 306-10.   Brown's Petition

15   alleges only trial errors.

16                   **4.    Exhaustion**

17         "A petitioner has satisfied the exhaustion requirement if: (1) he has 'fairly presented' his federal

18   claim to the highest state court with jurisdiction to consider it, . . . or (2) he demonstrates that no state

19   remedy remains available." Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).

20   Respondent argued Brown failed to exhaust his federal claims because he did not present the federal

21   basis of most of them to the state supreme court before bringing his federal Petition.  A'd Ans. P&A

22   pp. 7-8.  The R&R demonstrates his claims are exhausted, notwithstanding Respondent's argument.

23   No remedies remained available to Brown at the time he filed his amended Petition.  *See* Gray v.

24   Netherland, 518 U.S. 152, 161 (1996) (the exhaustion requirement may be satisfied "if it is clear that

25   [petitioner's] claims are now procedurally barred under [state] law"); Valerio v. Crawford, 306 F.3d

26   742, 770 (9th Cir. 2002) (claim may be considered exhausted if it is obviously procedurally barred),

27   _____

28   Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (applying AEDPA while stating that independent review
     is necessary when a state court does not supply reasoning for its decision).

*citing* Phillips v. Woodford, 267 F.3d 966, 974 (9th Cir. 2001) ("the district court correctly concluded that [petitioner's] claims were nonetheless exhausted because 'a return to state court would be futile"). This court **ADOPTS** the recommendation Brown's claims be deemed exhausted as evidenced, *inter alia*, by the California Supreme Court's 2001 denial of his untimely and successive sixth habeas petition.

### 5.     Procedural Default

When an adequate and independent ground for a state court's rejection of a federal claim involves a violation of certain state procedural requirements, a habeas petitioner is said to have procedurally defaulted his claim, and the federal courts cannot reach the merits of the federal claim. Coleman v. Thompson, 501 U.S. 722, 729 (1991) (federal courts lack jurisdiction to review a judgment of a state court which rests on a state law ground that is independent of the federal question and adequate to support the judgment). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989) (citations omitted).

To be an "independent" state procedural rule , the state law basis for the decision must not be interwoven with federal law. Michigan v. Long, 463 U.S. 1032, 1040-41 (1983); Harris, 489 U.S. at 265. To be "adequate," the state procedural rule must be strictly or regularly followed and consistently applied. *See* Morales v. Calderon, 85 F.3d 1387, 1392 (9th Cir. 1996). Unless the state court's decision clearly rests on an independent and adequate state ground, it is presumed that the state denial was based at least in part upon federal grounds invoked, and the petitioner may seek relief in federal court. Siripongs v. Calderon, 35 F.3d 1308, 1317 (9th Cir. 1994). The state court's mere citation to a case without elaboration does not necessarily satisfy the "clear and express statement" component of a procedural default finding. "[I]f it is unclear whether the state court dismissed the petition because of a state law procedural default or on the merits of the petitioner's federal constitutional claims, a federal court may review the merits of the claims presented." Loveland v. Hatcher, 231 F.3d 640, 643 (9th Cir. 2000), *citing* Siripongs, 35 F.3d at 1317. The ultimate burden of proof as to adequacy lies with the respondent because the state is in a better position to determine whether a particular rule is

1   consistently applied.  Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003) (holding that California's

2   untimeliness bar is independent but remanding to determine whether it is adequate).

3          The R&R recommends the court find Brown's claims are not procedurally defaulted, rejecting

4   Respondent's representations in the Answer, although the analysis is not expanded.  R&R, Dkt No. 95,

5   pp. 10-11.  Respondent's Objections to the R&R summarily state:  "Respondent continues to contend

6   that most of the claims are procedurally defaulted, as set forth in the Answer."  Resp.'s Obj. 2:4-5.

7   Respondent broadly generalizes:

8              Despite the passage of more than ten years, Petitioner has not given the
               courts a chance to rule on his federal Constitutional claims.  The time
9              has passed, and this Petition should be dismissed as being procedurally
               defaulted.

10

11   Answer 8:17-19.

12          Respondent's papers do not explicitly identify a particular state procedural rule(s) Brown

13   violated, do not demonstrate the procedural violation is a rule consistently applied and therefore

14   "adequate" to support the result, do not show such a rule is "independent" of federal law or that the

15   state's highest court "clearly" relied on the procedural violation as grounds for denying petitioner relief,

16   or differentiate with particularity those federal claims presented to the state courts from those not

17   presented.[11]  Accordingly, Respondent does not lay the foundation for a finding Brown's federal claims

18   are procedurally defaulted and therefore not cognizable on federal habeas review.  As Respondent does

19   not carry its burden to show procedural default of specific claims on adequate and independent state

20   law grounds, the court **ADOPTS** the R&R conclusion Respondent "fails to address the independence

21   or adequacy of the state procedural bars as applied to this case."  R&R 11:21-22.  The burden never

22   shifted to Brown to "demonstrate cause for the default and actual prejudice as a result of the alleged

23   violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental

24

_____

25          [11]  Respondent argues Brown "procedurally defaulted his claims because he failed to present them to
     the state's highest court in a timely fashion," citing the "new rule" of O'Sullivan v. Boerckel, 526 U.S. 838, 847
26   (1999) ("requiring state prisoners to file petitions for discretionary review when that review is part of the
     ordinary appellate review procedure in the State").  Answer 8:10-11.  The O'Sullivan Court was examining
27   failure to exhaust as one means to demonstrate procedural default (claims not "properly presented"):  before
     coming to federal court, state prisoners "must give the state courts one full opportunity to resolve any
28   constitutional issues by invoking one complete round of the State's established appellate review process."  Id.
     at 847.  Exhaustion is not disputed here.

miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750.  The court **OVERRULES** Respondent's summary

objection to the R&R conclusion Brown's claims are not procedurally defaulted.

### B.    Petition Grounds For Habeas Relief

####          1.    Ground One:  Prosecutorial Misconduct

#####               a.    Standards

Prosecutorial misconduct does not automatically invalidate a conviction.[12]  A habeas petition

will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with

unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477

U.S. 168, 181 (1986); <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974).   The court applies the

standard in <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993) to make that determination.[13]  <u>Brecht</u>,

507 U.S. at 623, 637 ("the standard for determining whether habeas relief must be granted is whether

the...error 'had substantial and injurious effect or influence in determining the jury's verdict'"), *quoting*

*and adopting harmless error standard of* <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946).

#####               b.    Allegations Of Error Addressed In R&R

Brown argues several theories of prosecutorial misconduct, in the presentation of evidence and

in closing argument, he contends warrant federal habeas relief.  Only if the conduct rendered his trial

so unfair as to deny him due process, no matter how improper the prosecutor's behavior may have

been, will this theory support a finding Brown's federal constitutional rights were violated. *See* <u>Smith</u>

<u>v. Phillips</u>, 455 U.S. 209, 220 n. 10 (1982) ("Even in cases of egregious prosecutorial misconduct, such

as the knowing use of perjured testimony, we have required a new trial only when the tainted evidence

was material to the case").  The R&R does not articulate its review of the state court determinations

on the issues under AEDPA (*i.e.*, whether the decisions were contrary to or an unreasonable

application of clearly established by the United States Supreme Court), but rather appears to have

---

[12]  *See* <u>Furman</u>, 190 F.3d at 1006 (finding many of the prosecutor's comments to be improper, and that he persisted in some of them despite several sustained objections, but upholding the state court's determination those indiscretions did not so prejudice the jury as to deny the petitioner due process, especially in consideration of a jury instruction to decide the case solely on the evidence rather than on counsel's arguments).

[13]  The Ninth Circuit "join[ed] the vast majority of . . . circuits by deciding that the <u>Brecht</u> standard should apply uniformly in all federal habeas corpus cases under § 2254," even if the state courts did not conduct a <u>Chapman [v. California</u>, 386 U.S. 18 (1967)] review. <u>Bains v. Cambra</u>, 204 F.3d 964, 977(9th Cir. 2000); <u>Laboa v. Calderon</u>, 224 F.3d 972, 976-77 (9th Cir. 2000).

conducted a *de novo* review as if the merits had not been reached in any state reviewing court.  The state court's reasoned decision on Brown's prosecutorial misconduct theories is provided as Attachment A to Lodgment 12, the July 23, 1992 decision of the California Court of Appeal affirming Brown's conviction, at pages 7-11.

Brown's prosecutorial misconduct grounds addressed in the R&R are: "asked leading questions, made erroneous inferences, and generally mistreated witnesses on the stand" (R&R 12:27-28, *citing* Pet. P&A pp. 17-33); inserted his own testimony in the questioning of Derrick Edwards (who testified Brown had been shot in the stomach not long before the incident and trial, and whom the prosecutor impeached by asking if he was aware no recent gunshot wound was found on Brown) (R&R p. 13, citing RT 462); was "belicose" or "overly aggressive" in handling witnesses (R&R p. 13, citing Pet. P&A pp. 17-22); made a sarcastic comment to witness Edwards and to witness Kimico Houston impugning their veracity (R&R p. 13, citing Pet. P&A p. 18); and misconduct in his confrontational cross-examination of Brown, which in some instances drew sustained objections (R&R pp. 13-14). The R&R concluded none of the instances reviewed "materially tainted the trial such that [Brown's] due process rights were violated."  R&R 14:4-5, *citing* <u>Smith</u>, 455 U.S. at 219.

Similarly, the R&R concludes that Brown's assignment of prejudicial error to portions of the prosecutor's closing argument did not amount to misconduct and fell within the "wide latitude" generally accorded closing arguments. R&R 14:6-20.  Brown specifically challenges the prosecutor's references to:  Brown's gang affiliation and criminal record; his theory that Brown's motives for the shooting were based on his earlier meeting with the victim; the inference that defense witnesses had motivations to lie; and the inference that Brown potentially lied about his alibis. R&R 14:7-12, citing RT 894-962.  In his Objections to this portion of the R&R, Brown reargues his Petition and simply disagrees with the R&R finding of substantial evidence to support the outcome.  Pet. Obj.  pp. 4-7. The R&R found "[n]one of the prosecutor's arguments appear[s] to reference evidence not otherwise admitted at the trial," citing the gang affiliation and criminal record.  R&R 14:12-14.  Even when the prosecutor's closing arguments "infer conclusions from circumstantial evidence, the inferences appear reasonably grounded and they were not represented as factual evidence."  R&R 14:16-19.  The R&R cites <u>Furman v. Wood</u>, 190 F.3d 1002, 1006 (9th Cir. 1999) in support of its conclusion the <u>Darden</u>

1  standard is not met because "even assuming the prosecutor's actions did amount to misconduct, there

2  is no showing by the Petitioner, nor does the record offer any reason to find, that the prosecutor's

3  conduct adduced material evidence that tainted the trial because the underlying facts overwhelmingly

4  support the jury's verdict." R&R 14:22-15:3.

5      The court has considered Brown's Objections and has reviewed *de novo* relevant portions of

6  the record, the evidence against him, and the parties' briefing on the foregoing prosecutorial

7  misconduct theories, and finds those trial errors did not have "substantial and injurious effect or

8  influence in determining the jury's verdict."  O'Neal v. McAninch, 513 U.S. 432, 436, 445 (1995).

9  The state court adjudications did not result in "decision[s] that [were] based on an erroneous

10  determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

11  § 2254(d)(2).  Those instances of alleged misconduct, singly or in combination, were harmless under

12  Brecht, and the conviction is supported by substantial evidence.  Accordingly, with respect to the

13  theories of prosecutorial misconduct the R&R addresses, the court **OVERRULES** Brown's objections

14  and **ADOPTS** the R&R recommendation habeas relief is not warranted on those Ground One theories.

15          c.      **Prosecutorial Misconduct In Violation Of Confrontation Clause**

16      Brown objects the R&R did not address his assertion the prosecutor violated his Confrontation

17  Clause rights.  The Confrontation Clause of the Sixth Amendment provides:  "In all criminal

18  prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

19  Brown's Petition assigns, in passing, prejudicial error to the prosecutor's use of certain hearsay

20  statements the trial court admitted over defense counsel's hearsay objection, asserted as one instance

21  in his list of several examples of alleged prosecutorial misconduct in support of Ground One.

22          The Magistrate Judge never addressed the violation of the
23      "Confrontation Clause," when the (prosecutor) read portions of the
        police report of 'Willie Jackson' during cross examination of petitioner.
        (See R.T. 881-82).  This was a clear violation of the confrontation
24      clause, and prosecutorial misconduct.  This deprived the petitioner of
        a fair trial as this hearsay evidence gave the inference that petitioner['s]
25      alibi was made up. . . . [¶]  Here in this case the prosecutor did not
        attempt to call Willie Jackson, as a witness.  This statement that was
26      read to the jury was inadmissible, the trial court also committed "plain
        error" when it overruled the defense objection. . . .[¶]  This statement
27      was extremely prejudicial, as it went to the heart of petitioner['s] alibi,
        that petitioner gave a party for his cousin Willie Jackson, and petitioner
28      was at that party.  The police report suggested there was no party.  This
        issue alone warrants reversal not [sic] only did the prosecutor exhibit

- 14 -                                    98CV0030

misconduct by violating the confrontation clause within the 6th
amendment of the U.S. Const., but also the trial court committed "plain
error," when allowing this evidence over a defense objection . . . .[14]

Brown's Obj. 9:19-10:12, *citing* Pointer v. Texas, 380 U.S. 400, 403 (1965), Maryland v. Craig, 497

U.S. 836-46 (1990), Tennessee v. Street, 471 U.S. 409, 417 (1985).

Brown also criticizes the prosecutor's subsequent use of Jackson's hearsay statements to police

in closing argument to refute Brown's alibi as a component of his Confrontation Clause issue.  Brown

quotes the argument:

You know what is funny about Junior's party?  Everybody went there
except Junior.  Where is Junior, the birthday boy?  He's not here.  Why?
Because the party didn't happen.  Don't bring Junior in, man.  He
already told the cops and they know the story.

Pet. Brief 25:12-16, *citing* RT 918-919 (transcript of prosecutor's closing argument).

Even under a liberal reading of the Amended Petition, however, Brown has not adequately

raised a Confrontation Clause claim.  Ground One alleges at most on that issue *prosecutorial misuse*

of the Jackson hearsay, in a list of other examples.  His Petition does not allege improper admission

of testimonial hearsay violated his federal constitutional rights, but only as a purportedly erroneous

denial of an evidentiary objection which permitted the prosecutor to allude to that evidence in closing

argument.  He complains the prosecutor misused the hearsay to cast doubt on Brown's alibi defense,

but only as an example among others he identifies of purported prosecutorial misconduct.  The only

explicit allusion from which a Confrontation Clause issue could be inferred appears in footnote 19 of

Brown's brief: "Petitioner's alibi was that he was at the birthday party for his cousin Junior."  Pet. Brief

26:22-23, n. 19.

The court has reviewed the trial transcript to identify the timing and manner of the prosecutor's

use of the Jackson hearsay.  Jackson's statement was introduced or alluded to twice during the trial,

once by Sergeant Raybold and again when the prosecutor read to Brown the statement Jackson made

---

14 Brown also contends his trial counsel "committed 'plain error,' when allowing this evidence over
a defense objection, and finally trial counsel's failure to investigate or call 'Willie Jackson' as a witness.  These
cumulative errors deprived petitioner of a fair trial.'"  Brown's Obj. 10:12-14.  If a "defense objection" was
made, it had to come from trial counsel.  Accordingly, Brown's contention his trial counsel committed "plain
error" (which is not in any event the legal standard against which to measure IAC claims) has no merit.  It is
the judge, not counsel, who decides evidentiary objections.

to Raybold, during Brown's cross-examination.  Jackson's statement contradicted Brown's alibi that he had given Jackson a party, and that Jackson and others were with him at the time of the homicide.  However, Sergeant Raybold also testified Brown himself had given two different alibis, the first that he was out of town at the time of the shooing and later the party alibi.[15]  The cross-examination of Brown to which the closing argument referred appears at RT 881-882 (emphasis added):

> Q.   Who is this cousin that you gave a party for?
>
> A.   Willie Jackson.
>
> Q.   Willie Jackson?
>
> A.   That's correct.
>
> Q.   Is that the same guy that [police detective] Grant Raybold talked to later?  Is he a cousin?
>
> A.   That's correct.
>
> Q.   It is not Willy R. Brown, a.k.a. Junior?
>
> A.   No, it is not.
>
> Q.   How old is he?
>
> A.   Yes [*sic*].  That is hypothetical.  But he used the wrong name.  It is Jackson and not Brown.
>
> Q.   You know what he told Grant Raybold, don't you?
>
> A.   Yes.  And he didn't want to talk to the police.  That is why he told them that.
>
> Q.   What did he tell Grant?
>
> A.   You got it.  You read it.
>
> **MR. RICHARDSON [defense counsel]:   Objection.   That is hearsay what this witness told Grant Raybold.**

---

[15]  Grant Raybold ("Raybold") had testified earlier in Brown's trial.  RT 533-591.  He stated he was a police Sergeant for the city of San Diego.  RT 533.  In pertinent part, Raybold testified he was assigned to a team investigating the killing of Donald Johnson, the homicide victim Brown was ultimately convicted of killing.  His assignment was to do witness interviews.  RT 534.  He interviewed Brown, who initially said he had left San Diego the weekend of the killing and had stayed at a motel in Los Angeles.  RT 533-536.  Brown later gave Raybold a different story, that he had heard shots and had driven by the scene shortly after it happened.  RT 538, 545.  With respect to the second version of events Brown gave Raybold: "Q. Did he say at this time to you where he was when he heard the shots?  A.  Yes, he did.  Q. W here did he say he was?  A. He said he was in the apartment at 3331 Van Dyke.  Q.  Did he indicate whether there were any people there with him?  A. Yes.  Q.  What did he say?  A.  He said there were a number of people there at this birthday party that was supposedly occurring there."  RT 546-547.

1    **THE COURT:  Objection overruled.**

2    BY MR. WILLIAMS [the prosecutor]:

3    **Q.    He told him, "I says I wasn't with Tommy Brown.  I didn't attend any party."  He told them that, didn't he?**

4    **A.    That's correct.**

5    **Q.    Why would he lie?**

6    **A.    Because he didn't want to talk to the police**. Go ahead and
7    finish reading everything that he said.

8    Q.    Why wouldn't he want to talk to the police?

9    A.    You can see in the report.  It says at the end.

10    THE COURT:  There is no question.

11    "Statements taken by police officers in the course of interrogations are . . . testimonial . . . ."

12    Crawford v. Washington, 541 U.S. 36, 52, 53 (2004) ("even if the Sixth Amendment is not solely

13    concerned with testimonial hearsay, that is its primary object, and interrogations by law enforcement

14    officers fall squarely within that class").  Even if Brown's Amended Petition were liberally construed

15    to raise a Confrontation Clause claim,[16] the court finds no basis for habeas relief.[17]

16    In Crawford, the United States Supreme Court articulated a new Sixth Amendment

17    Confrontation Clause test applicable to testimonial hearsay, overruling the previously-controlling

18    articulation in Ohio v. Roberts, 448 U.S. 56 (1980).  The Crawford Court held that where testimonial

19    hearsay evidence is at issue in a criminal trial, "the Sixth Amendment demands what the common law

20

---

21    [16] Respondent contends Brown raised the admission of the Willie Jackson hearsay as a constitutional
22    violation for the first time in his fifth state habeas petition, filed March 14, 1997 ( Lodg. 16) (denied on May
28, 1997 with a citation to In re Clark, 5 Cal.4th 750) raising two claims: (1) he was purportedly denied his
23    constitutional right to confront a witness against him; and (2) he was purportedly denied his constitutional
rights by admission of his prior arrests.  Id.  He explained the delay on grounds "Appellate counsel Gregory
24    Marshall failed to present this issue to the California Supreme Court for review to preserve petitioner['s] rights
for any future appeals." Lodg. 16 p. 6; Dkt No. 92, 4:8-15.  Respondent does not demonstrate that claim was
25    procedurally defaulted.

26    [17] Respondent did not pursue the affirmative defense of procedural default of that claim, having taken
the position it was not raised in the Amended Petition.  The court finds no procedural default, for failure of
27    Respondent to carry the burden under Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003) to demonstrated the
state court citation to In re Clark substantiated the default.  Even if Respondent had made that observation,
28    the observation alone would not be enough.  See King v. Lamarque, 464 F.3d 963 (9th Cir. 2006) ( holding
a citation to a procedural rule such as Clark (which at one time had been found to be inadequate to support a
procedural default) requires an even higher demonstration of procedural default than other of those rules)

required:  unavailability and a prior opportunity for cross-examination." Id. at 68.  The Roberts test "conditions the admissibility of all hearsay evidence on whether it falls under a 'firmly rooted hearsay exception' or bears 'particularized guarantees of trustworthiness.'" Crawford, 541 U.S. at 60, *quoting* Roberts, 448 U.S. at 66.  Jackson did not testify at Brown's trial, and his formal statements to police were testimonial, his statements became part of the record at Brown's trial.  No one has referred the court to any portion of the record establishing either (1) Jackson's unavailability to testify at trial or (2) that Jackson's statements to an investigating detective were made in circumstances that involved any opportunity for Brown to cross-examine Jackson.  Under the Crawford test, Brown's Confrontation Clause challenge (had it been properly raised and supported in state court) to admissibility of that evidence would have facial validity because of the more restrictive rule  that "[t]estimonial statements of witnesses absent from trial" are admissible "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine [the witness]." Crawford, 541 U.S. at 59.

However, Crawford was decided in 2004.  Brown's conviction occurred in 1990, and he filed his federal habeas petition in January 1998.  The United States Supreme Court recently held, in Whorton v. Bockting, -- U.S. --, 127 S.Ct. 1173 (U.S. Feb. 28, 2007), that the Crawford decision does not apply retroactively to cases already final on direct review.   Accordingly, Brown's Sixth Amendment challenge to the admission of testimonial hearsay at his trial would be decided under the more malleable Roberts test. Under Roberts, testimonial hearsay statements are admissible without offending the Confrontation Clause if the declarant was unavailable to testify and the declarant's statement bore sufficient indicia of reliability, either because the statement fell within a firmly rooted hearsay exception or because there were "particularized guarantees of trustworthiness" relating to the statement in question.  Roberts, 448 U.S. at 66.  Although the trial court overruled defense counsel's hearsay objection, that court recited no firmly-rooted hearsay exception nor any "particularized guarantees of trustworthiness," so neither ground for admitting that testimonial hearsay is satisfied on this record, even under the more lax Roberts test.

Nevertheless, even assuming constitutional error, this court finds the error was harmless.  Viewing the record as a whole, this court cannot conclude Jackson's statement had a substantial or injurious effect or influence on the jury's verdict.  Brown's own testimony was elicited to explain the

conflict between Jackson's statements to police and with his own testimony advancing an alibi defense. He testified Jackson lied to the police when he told them there was no party, in order to avoid having to cooperate or to be implicated in the case.  Brown also introduced other evidence in support of his alibi defense.  Jackson's statements, informed by Brown's explanation, did not amount to hearsay which destroyed the alibi defense.  Credibility is to be determined by the jury, and the verdict was amply supported by the evidence.

Moreover, in his Petition For Review of the Court of Appeal decision affirming his conviction, Brown revisited his list of instances of alleged prosecutorial misconduct, including with respect to the treatment of the Jackson hearsay, but cited only California law as he had in his appeal, without identifying any federal constitutional basis for his claims, and without isolating the Confrontation Clause concern as a separate ground for relief.[18]  In that petition, Brown stated:

> Next the prosecutor "testified" that the birthday party honoree, "Junior," told police he (Junior) was not at a party the evening of the shooting.  The court overruled a defense hearsay objection to the prosecutor's testimony.  (R.T. 881-882).

Lodg. 12, p. 19; *see also* Lodg. 12, p. 22 (quoting prosecutor's closing argument allusion to what the absent witness told police).[19]

In its July 23, 1992 unpublished opinion, the Court of Appeal rejected most of Brown's twenty instances of alleged prosecutorial misconduct.  The California Supreme Court denied Brown's petition for review.  In particular, with respect to the prosecutor's use of the police report interview of Jackson, the Court of Appeal ruled:

> Similarly, he objected to a question asking him to read a portion of a police report of a friend's interview in which the friend said Brown

---

[18]   Brown also connects use of Jackson out-of-court statements to his allegations of ineffective assistance of defense counsel for failure to call Jackson as a witness, but he relies on no supporting federal case law suggesting the treatment of that evidence should be treated as a separate ground for habeas relief, let alone as a separate federal constitutional violation.

[19]   Brown's sixth state habeas petition, filed in October 2000, reiterated his claim the prosecutor "testified" Junior was not at the party and his counsel's objection was overruled, citing R.T. 881-882.  He also repeated in his serial listing of instances of alleged prosecutorial misconduct the general allegation he placed evidence and information before the jury that was not admitted into evidence, "referring to extrajudicial statements not admitted at trial," citing California case law in support of that alleged error.  Lodg. 17, Pet. pp. 24, 34.  The California Supreme Court summarily denied that petition on February 28, 2001. *See* fn 2, above.

1                     was not at a party the night of the shooting.  Brown's objection citing
2                     hearsay was overruled.  Since he did not cite misconduct or request an
                     admonition, Brown is deemed to have waived any misconduct claim.

3   Lodg. No. 12, Attach. A, p. 10.

4          Challenges to a state trial court's evidentiary rulings are not cognizable on federal habeas

5   review unless the admission or preclusion of evidence violated the petitioner's due process right to a

6   fair trial.  McGuire, 502 U.S. at 70; see Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999) ("It is

7   well settled that a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief

8   only if it renders the state proceedings so fundamentally unfair as to violate due process").  Brown

9   relies on his assertion of *evidentiary ruling* error in admitting the Jackson hearsay as a basis for

10  belatedly attempting to bootstrap the evidentiary ruling into a Confrontation Clause violation.  This

11  court concludes Brown failed to raise a Confrontation Clause claim in state court adequate to preserve

12  the claim as cognizable in subsequent federal habeas proceedings.  His criticism of the introduction

13  of Jackson's statements, there and here, arises in the context of the prosecutor's allusion to those

14  statements during closing argument.  Brown's trial counsel unsuccessfully objected on hearsay grounds

15  to the prosecutor's discussing Jackson's statements during his cross-examination of Brown -- that there

16  was no party and his inability to vouch for that version of Brown's alibis -- but the trial court overruled

17  the objection.  Brown had the opportunity to -- and did -- offer an explanation for Jackson's purported

18  lies to the police.

19          The court **SUSTAINS** Brown's Objection that the R&R did not address his contention the

20  Jackson hearsay was erroneously admitted at trial, to the extent a liberal reading of his First Amended

21  Petition could be construed as signaling a Confrontation Clause concern.  However, the court

22  **OVERRULES** his objections on the merits, both as to his assertion he adequately raised the claim as

23  cognizable on federal habeas review and as to his contentions the admission of the hearsay evidence

24  or the prosecutor's allusion to that evidence in closing argument violated due process, and **DENIES**

25  habeas relief on that theory.

26                      **2.**      **Grounds Two, Three, And Four:  Evidentiary Issues**

27          Brown's Grounds Two, Three, and Four challenge the admission at trial of gang evidence and

28  evidence of his prison prior.  Challenges to a state trial court's evidentiary rulings are not cognizable

1   on federal habeas review unless the admission or preclusion of evidence violated the petitioner's due

2   process right to a fair trial. <u>McGuire</u>, 502 U.S. at 70; *see* <u>Spivey</u>, 194 F.3d at 977-78 ("It is well settled

3   that a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it

4   renders the state proceedings so fundamentally unfair as to violate due process"); <u>Pulley v. Harris</u>, 465

5   U.S. 37, 41 (1984); *see also* <u>Walters v. Maass</u>, 45 F.3d 1355, 1357 (9th Cir. 1995). Only if the jury

6   could draw no permissible inference from the challenged evidence can its admission violate due

7   process. <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919-20 (9th Cir. 1991). The evidentiary error must

8   be of constitutional dimensions and have had "'a substantial and injurious effect' on the verdict" in

9   order support habeas relief. <u>Dillard v. Roe</u>, 244 F.3d 758, 767 n. 7 (9th Cir. 2001), *quoting* <u>Brecht</u>,

10  507 U.S. at 623.

11      Brown asserts as his Petition Ground Two gang expert testimony was improperly allowed

12  because it was neither relevant nor did the case require "expert" testimony. Pet. P&A pp. 34-39. He

13  identifies no clearly established federal law that supports his contention admission of that evidence

14  violated his constitutional rights.[20] The court **OVERRULES** Brown's objections to the R&R

15  recommendation this court find the expert witness testimony was relevant, at a minimum, to

16  corroborate the reasonableness of an eye witness' contention that fear of gang retaliation caused her

17  to misstate facts to authorities until Brown was incarcerated. The expert testimony in Brown's case

18  provided pertinent context for the gang involvement testimony of several witnesses at Brown's trial

19  and contributed to permissible credibility assessments of those witnesses. The R&R recommendation

20  habeas relief be denied on Ground Two is **ADOPTED**.

21      Brown's Petition Ground Three alleges the wrongful admission of irrelevant and prejudicial

22  evidence of Brown's own gang affiliation.[21] The state court reasonably found admission of gang

23  affiliation was proper "to show witness bias, intimidation, and credibility, and its probative value

24

25      [20] *See* <u>Windham v. Merkle</u>, 163 F.3d 1092, 1103 (9th Cir. 1998) (approving admission of gang expert testimony to show possible motive of the defendant).

26      [21] Sergeant Raybold also testified he had interviewed Sylvia Wade, a key witness to the killing, and

27  that she had given several versions of the events that night. RT 549. He testified she ultimately told him someone known to her as "Little Man" shot Donald Johnson. RT 549-550. She identified Brown in a photographic lineup as the person she had previously referred to as "Little Man." RT 562. Raybold testified

28  Brown told Wade "he was from 118th Street being the East Side -- East Coast Crips in Los Angeles" with the street name "Little Man" or "Lil Man." RT 546.

outweighed any potential prejudicial effect." Pet. Ex. 1, p. 11.  The evidence was probative of the credibility of several trial witnesses.   For the reasons recited in the R&R, the court finds not only no constitutional violation is supported by that assignment of error, but also defers to the state court's findings that evidence was relevant and probative, irrespective of any negative view the jury may have taken of it.  Brown's objections are accordingly **OVERRULED**, and the R&R recommendation to deny habeas relief on Ground Three is **ADOPTED**.

Brown's Ground Four alleges evidence of his prior incarceration was improperly admitted and resulted in a due process violation.  The state court reasonably found Brown's argument "misstates the record," because the trial court made no ruling on the admission of that evidence, "deferring the issue until it could consider Brown's testimony." Pet. Ex. 1 p. 21.  Before he testified at trial, the court ruled admissible Brown's prior felony conviction to impeach his credibility, under CAL. EVID. CODE § 788. Defense counsel reasonably elicited from Brown on direct examination the testimony that he had been convicted of a felony, to lessen the impact the evidence could have on the jury if presented by the prosecution.  Instead of simply responding in the affirmative, Brown added the nature of the felony conviction (burglary) and volunteered:  "I went to prison for it."  RT 852.  Moreover, his brief statement about what happened to him as a result of the admissible evidence of his prior felony conviction cannot reasonably be found to have substantially affected the jury's verdict on this record. Accordingly, Brown's objections are **OVERRULED**, and the R&R recommendation to deny habeas relief on Ground Four is **ADOPTED**.

### 3. Ground Five:   Improper Denials Of Continuance Motion And Self-Representation

Brown alleges his federal due process rights were violated when the trial court denied his motion for a continuance of the trial midway through so he could prepare to represent himself.  The Sixth Amendment contains "an independent constitutional right of self-representation" in a criminal trial.  Faretta v. California, 422 U.S. 806 (1975).  When a defendant makes an unequivocal assertion of his right to self-representation within a reasonable time prior to trial and requests to proceed *in propria persona*, an unconditional right may exist to proceed at trial without the assistance of counsel. However, the right is not absolute, and there is a timeliness component to the decision whether to

allow self-representation, particularly when the defendant consented at the outset to be represented by counsel and the presentation of the defense case has begun before the defendant asks to proceed *pro se*. Id., 422 U.S. at 820-21, 835-36.  Brown requested the continuance after the prosecution had rested and his counsel had begun the presentation of his defense.  Federal courts deciding habeas petitions do not revisit discretionary decisions of trial courts that do not violate clearly established federal law as articulated by the United States Supreme Court.   Brown identifies no such basis for concluding he suffered deprivation of a constitutional right on this theory, especially since his ineffective assistance of counsel claims are insufficient to undermine confidence in his conviction. The R&R recommends the court find the request for continuance and self-representation were "untimely" and therefore "not within Petitioner's 6th Amendment right to represent himself," and Brown does not allege the denial had any "substantial or injurious effect."  R&R 17:22-27, *citing* Brecht, 507 U.S. at 634.

This court finds no abuse of discretion in the trial court's denial of a continuance so Brown could assume his own representation.  His argument that decision denied him a constitutional right is without merit, inasmuch as the need for the requested continuance never materialized. *See* Marsden hearing discussion, below.  Accordingly, the court **OVERRULES** Brown's objections and **ADOPTS** the recommendation his Petition be denied on this theory.

### 4.  Ground Six:  Denial Of Right To Substitute Trial Counsel

Brown contends he and his trial counsel had a complete breakdown in their relationship.  He contends his motion for new counsel under People v. Marsden, 2 Cal.3d 118 (1970) was wrongly and unfairly denied by the trial court.

In Marsden, the California Supreme Court held that a trial court must listen to a criminal defendant's specific reasons for requesting substitute appointed counsel before denying the motion, while recognizing "the decision whether to permit a defendant to discharge his appointed counsel and substitute another attorney during the trial is within the discretion of the trial court, and a defendant has no absolute right to more than one appointed attorney." Id. at 123-124; *see* Morris v. Slappy, 461 U.S. 1 (1983) (defendants have no cognizable complaint regarding choice of appointed counsel so long as they are adequately represented); United States v. Rewald , 889 F.2d 836, 856 (9th Cir. 1989) (the / / /

1  right to choice of counsel is restricted to defendants who can retain counsel).  Dissatisfaction with

2  one's attorney does not create a right to have new counsel appointed.  *See* <u>Jackson</u>, 921 F.2d 882.

3         Brown filed a <u>Marsden</u> motion about half way through the trial to have his counsel removed.

4  The Sixth Amendment "requires on the record an appropriate inquiry into the grounds for such a

5  motion, and that the matter be resolved on the merits before the case goes forward." <u>Schell v. Witek</u>,

6  218 F.3d 1017, 1025 (9th Cir. 2000) ("a state trial court has no discretion to ignore an indigent

7  defendant's timely motion to relieve an appointed attorney").  Brown received a hearing on the record.

8  Lodg. 8, Nov. 27, 1990.  His counsel explained to the court at the outset Brown was unhappy with his

9  questioning of a particular witness, a witness' delayed arrival to testify due to transportation problems,

10 counsel's inability to contact two other witness despite attempts to give notice or subpoenas, and

11 counsel's preparation of certain photographs.  Lodg. 8, RT 1-3.  "None of these things are satisfying

12 Mr. Brown.  He informed me he wants to represent himself and I informed him that I will make the

13 request." <u>Id.</u> 3:9-11.  Brown himself addressed the court, identifying those and other tactical decisions

14 in counsel's presentation of his case with which he disagreed.  During his colloquy with the judge, he

15 indicated both his desire to represent himself and his desire for a different attorney:

16      THE COURT:  . . . If you are asking to represent yourself in this case --
        is that what you are asking?
17
        THE DEFENDANT:  Yes.  I also have contact with attorney Alex
18      Landon and he implicated to me that he would be very happy to step in.

19      THE COURT:  There is no chance in the middle of trial he would [be]
        ready to proceed.
20
        THE DEFENDANT:  But he will be able to assist me.
21
        THE COURT:  Well maybe he would and maybe he wouldn't. . . . ¶ Is
22      your request that you want to retain Mr. Landon to represent you at this
        point in time?  That is not what I understood was your request.
23
        THE DEFENDANT:  No.
24
        THE COURT:  What is your request?
25
        THE DEFENDANT:  Basically to relieve Mr. Richardson.
26
        THE COURT:  If I do that, the only other person available to me
27      immediately to represent you is yourself.

28      THE DEFENDANT:  Yep.

98CV0030

1                THE COURT:  Are you requesting to represent yours[elf]?

2                THE DEFENDANT:  Yes.

3 Lodg. 8, RT 5:22-6:18.

4        The court then reviewed with Brown the seriousness of the charges against him and discussed

5 the rights explained on the <u>Ferreta</u> form.  The judge counseled him of the mistake he viewed it to be

6 for the defendant to try "to represent yourself in the middle of this trial," but acknowledged Brown had

7 the right to do so.  Lodg. 8, RT pp. 7-10.  He reviewed Brown's education and exposure to legal

8 processes, admonished him the court could not step in to help him or make any objections that an

9 attorney might make on his behalf, the amount of courtroom work left to do to get his case before the

10 jury, and the like.  <u>Id.</u> pp. 10-12.  The court explored options, but expressed a disinclination to grant

11 a continuance in the middle of the trial.  <u>Id.</u> p. 12.  Brown's counsel recited on the record his trial

12 preparations, efforts to locate witnesses, personal investment of time in the case, investigator's activity,

13 and willingness to turn over all his materials for Brown to use, with an offer to continue helping, while

14 expressing confusion over Brown's complaints about his representation in light of his

15 conscientiousness in preparing the case.  <u>Id.</u> pp. 13-15.

16                THE COURT:  Unless you are prepared to retain your own attorney or
represent yourself, I haven't seen any grounds for me to relieve your
17                appointed counsel. . . .  There really isn't anything.  You don't have a
right to just say, "Well, today I don't like what he is doing and therefore,
18                you know, I want somebody else."
               . . .

19

20                THE COURT:  Let me say this:  (1) I am not granting a continuance of
the trial at this point; (2), I need to know, do you want to represent
21                yourself or do you want Mr. Richardson to continue to represent you or
are you telling me you have an attorney immediately available that you
22                want to substitute in.  We can do that. . . .  [Or] I will allow Mr.
Richardson to be your Advisory Counsel and so designate him.  Those
23                are the choices. . . . [¶]  Mr. Brown, have you made a decision as to
what you want to do?

24                THE DEFENDANT:  Yes, I have.

25                THE COURT:  What is that?

26                THE DEFENDANT:  I chose at this time not to represent myself but I
also would like to be on the record as indicating I am being denied
27                another legal counsel.

28 / / /

1           THE COURT:  The record should reflect that I am denying you the
2           right at this point in these proceedings to request another Court-appointed counsel other than Mr. Richardson.

3    Lodg. 8, RT 15:10-17:11.

4          On that record, this court concurs with the R&R conclusion Brown's dissatisfaction with his

5    trial counsel arose from his disagreement with trial tactics, not from any fatal breakdown in

6    communications.  No inference can be drawn from the record that his attorney's representation

7    amounted to a constructive denial of counsel.  As is evident from the hearing transcript, Brown's claim

8    that he received an inadequate <u>Marsden</u> hearing with constitutionally defective inquiry is without

9    merit.  The trial court adequately ascertained the essential elements of the nature and extent of Brown's

10    conflict with his attorney through appropriate inquiry, the manner in which counsel had prepared and

11    was defending the case, and permissibly considered the timeliness of the motion.  *See* <u>Daniels v.</u>

12    <u>Woodford</u>, 428 F.3d 1181, 1198 (9th Cir. 2005).  Accordingly, Brown's Objections to the R&R

13    recommended disposition of his Petition Ground Six are **OVERRULED**, and the R&R is **ADOPTED**.

14             **5.    <u>Ground Seven:  IAC Of Trial And Appellate Counsel</u>**[22]

15          Brown asserts numerous grounds for his claim he received ineffective assistance of trial

16    counsel.  He objects the magistrate judge should have permitted limited discovery and an evidentiary

17    hearing before preparing his recommendation to deny the IAC claims because "facts existed outside

18    of the trial court record" associated with his conflict with his trial counsel that he should have been

19    allowed to develop. Obj. 23:11-22. He vaguely contends "Petitioner was entitle[d] to a factual hearing

20    of some limited sort to prove the claims raised herein, trial counsel deficiencies deprived petitioner

21    of a fair trial."[23]  Obj. 18:19-25, *citing*:  <u>Strickland</u>, 466 U.S. at 688 (not discussing evidentiary

22    hearings at the cited pinpoint); <u>Siripongs</u>, 35 F.3d at 1318, 1314, 16 (distinguishable in finding a

23    "colorable" claim of IAC in a capital case entitled the petitioner to an evidentiary hearing, where

24    counsel failed to put on any mitigating evidence or to conduct more than a cursory investigation of

25    defendant's background and on the strength of affidavits in the record stating counsel performed in a

---

26

27        [22] The court finds Brown's articulation of his dissatisfaction with his representation on appeal are only summarily stated and without any application of the <u>Strickland</u> standard.  The court accordingly does not reach

28    those inchoate allegations.

        [23] *See* FN 7, above.

1    manner well below accepted standards); and Parrish v. Small, 315 F.3d 1131, 1134 (9th Cir. 2003)

2    (entitlement to evidentiary hearing to develop record whether petitioner was prejudiced by

3    unconstitutional shackling at trial).  Brown contends the magistrate judge should have conducted fact-

4    finding, for example, on his claims that his counsel improperly handled the lighting issue and evidence

5    and the investigation of the scene where the crime occurred.  Obj. 18:7-25.  However, that issue was

6    amply discussed by the Court of Appeal (and in the R&R based on the trial record) with the reasonable

7    conclusions the photographic evidence, the defense investigator's testimony, and the interviews with

8    nearby residents defeat Brown's contention any error of constitutional dimension occurred, let alone

9    that he could demonstrate the prejudice necessary to prevail on this IAC theory.

10        Federal habeas courts must presume a determination of a factual issue made by a state court

11   is correct.  28 U.S.C. § 2254(e)(1).  An evidentiary hearing may be held to develop the factual basis

12   of a claim if the petitioner failed to do so in state court only when (1) the claim relies on "a new rule

13   of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was

14   previously unavailable," or based on a new factual predicate that could not have been previously

15   discovered, and "the facts underlying the claim would be sufficient to establish by clear and convincing

16   evidence that but for the constitutional error, no reasonable fact-finder would have found the applicant

17   guilty of the underlying offense."  28 U.S.C. § 2254(e)(2).  Brown does not satisfy any of those limited

18   circumstances.  No argument he raises suggests he did not or could not have fully developed the

19   factual bases of his claims in his multiple state court proceedings.  The court **OVERRULES** Brown's

20   objection that the magistrate judge erred in not conducting an evidentiary hearing.

21        The California Court of Appeal, in its July 25, 1992 reasoned, unpublished decision, reviewed

22   and rejected Brown's "14 examples of claimed counsel ineffectiveness."  Lodg. 13,[24] Pet. Denial p. 4.

23   The California Supreme Court declined review.  The Court of Appeal applied the federal constitutional

24   standard articulated in Strickland v. Washington, 466 U.S. 668 (1984) to each of Brown's specific

25   instances of alleged IAC to reasonably conclude Brown failed to meet his burden to show both

26

27        [24] Lodgment 13 combines the California Supreme Court's December 29, 1993 denial of petition for
     writ of habeas corpus, Brown's November 1, 1993 petition for writ of habeas corpus to that court, the
28   July 25, 1992 Court of Appeal reasoned decision denying Brown's petition for writ of habeas corpus on IAC
     grounds,  and the California Supreme Court's October 15, 1992 denial of Brown's habeas petition.

deficient conduct (*i.e.*, representation that fell below an objective standard of reasonableness under prevailing professional norms) and resulting prejudice.

The R&R revisited Brown's IAC claims on the merits of the particular instances alleged and recommends this court deny relief on Ground Seven. Brown's overarching objection is that the magistrate judge reached "unreasonable" determinations in recommending his Petition be denied on IAC grounds. The court **ADOPTS** the R&R recommended result with respect to each discrete example of alleged IAC Brown advances and **OVERRULES** his Objections to each. This court also finds, under AEDPA standards, the state courts' adjudication applying Strickland to the merits of Brown's IAC contentions should not be disturbed because the resulting decision is not "contrary to, or involve[] an unreasonable application of clearly established Federal law," nor did it result in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d)(1),(2).

### 6.   Ground Eight:  Erroneous Jury Instruction

Brown asserts the trial court deprived him of his due process right to a fair trial by giving CALJIC No. 2.04 "without any evidence supporting the instruction." Obj. 23:27-28. He further argues the magistrate judge's explanation for giving that instruction "is error itself." Id. 24:1-2. CALJIC No. 2.04 advises the jury (emphasis added):

> **If you find** that a defendant attempted to or did persuade a witness or did fabricate evidence to be produced at the trial, such conduct **may be considered** by you as a circumstance tending to show consciousness of guilt. However, such conduct **is not sufficient by itself to prove guilt** and its weight and significance, **if any**, are matters for your determination.

The giving of an erroneous jury instruction raises a constitutional issue cognizable on federal habeas review only if it so infected the entire trial that it denied the defendant due process. McGuire, 502 U.S. at 72. There must also "be a reasonable likelihood that the jury has applied the challenged jury instruction in a way that violates the Constitution." Id., *quoting* Boyde v. California, 494 U.S. 370, 380 (1990). Due process is not violated, even if constitutional error occurred, unless the error created a substantial and injurious effect or influence on the jury's verdict. Brecht, 507 U.S. at 637.

/ / /

1    In its reasoned decision addressing Brown's ascribing of error to several jury instructions,

2    including CALJIC 2.04, the Court of Appeal relied solely on the California law grounds Brown

3    asserted to find no prejudicial error. The highly conditional, discretionary, and speculative application

4    of CALJIC No. 204 to the evidence, predicated on preliminary findings the jury had first to make

5    before the instruction would have any bearing on their deliberations, prevents any reasonable finding

6    it infected the entire trial so as to raise a federal constitutional concern, even had Brown presented the

7    claim as such. The jury may not have applied the instruction at all.  The inference authorized by the

8    instruction would not arise absent the predicate finding of witness intimidation, and the instruction

9    itself prohibits the jury from relying on such a finding as sufficient to prove guilt.  If the condition

10   precedent to applying that instruction was not met, they were to ignore the instruction altogether.

11   Brown makes no showing the state court's reasoned decision on the alleged instructional error is

12   contrary to or an unreasonable application of clearly established federal law or was based on an

13   unreasonable determination of the facts.  Accordingly, Brown's Objections to the R&R's conclusion

14   no due process concern is associated with the giving of that instruction are **OVERRULED**, and the

15   recommendation to deny federal habeas relief on that ground is **ADOPTED**.

16   **III.    CONCLUSION AND ORDER**

17   For the foregoing reasons, **IT IS HEREBY ORDERED** the R&R recommendations that all

18   Brown's grounds and theories for federal habeas relief be denied is **ADOPTED**, on the modified

19   reasoning and premises set forth in this Order where they may deviate from or augment the R&R, and

20   the Petition is **DENIED** in its entirety, terminating this case.

21   **IT IS SO ORDERED**.

22   DATED:  March 27, 2007

23

24   **HONORABLE LARRY ALAN BURNS**
     United States District Judge

25

26

27

28